IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHERI D. DUNCAN                                                                                    PLAINTIFF

V.                                             NO. 14-5264

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Sheri D. Duncan, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her current SSI application on May 3, 2011, alleging an inability to work due to bipolar disorder, anxiety disorder, posttraumatic stress disorder (PTSD), agoraphobia, schizophrenia, high blood pressure, high cholesterol, and diabetes. (Tr. 189-198, 224, 228). An administrative hearing was held on February 5, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 44-84).

By written decision dated March 1, 2013, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe – bipolar disorder, PTSD, and

panic disorder with agoraphobia. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels; however, she has the following nonexertional limitations. She is limited to unskilled work involving individually centered processes rather than a team-oriented process. She cannot do assembly-line work. The work environment must be limited to a place where fellow employees are a relatively stable team, as in having relatively low turnover and not subject to new revolving faces on a daily basis. Further, the work should be repetitious and predictable, as well as away from direct public contact.

(Tr. 17). With the help of the vocational expert (VE), the ALJ determined that there were jobs Plaintiff would be able to perform, such as hand packager – medium work; hand packager; advertising material distributor; machine packaging, and janitorial work – all light work. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 26, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 9). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

2

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following issues in this matter:  1) Whether there is substantial evidence to support the ALJ's findings; and 2) Whether the ALJ erred in failing to consider Plaintiff's low GAF scores. (Doc. 12).

#### A. Evidence:

Plaintiff's medical records date back to August 3, 2005, when Plaintiff presented herself to Comanche County Memorial Hospital, complaining of vomiting. (Tr. 839). As the relevant time period in this case begins on May 3, 2011, the date Plaintiff filed her SSI application, the most relevant records begin at that time. However, the Court has considered records and medical opinions from outside the application date, in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)(holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

With respect to Plaintiff's mental impairments, the records reveal that on the following pre-application dates, Plaintiff was treated at various times for her alleged mental impairments: July 19, 2006, by Dr. Brad Bigelow, a licensed psychologist (Tr. 314); January 4, 2007, April 4, 2007, and August 4, 2007, at Red Rock Behavioral Health Services (Tr. 459, 468, 477); April 19, 2007, at North Rock Medication Clinic (Tr. 449); and June 19, 2007, at St. Anthony Hospital (Tr. 329).  Plaintiff began seeing Dr. Richard Zielinski, M.D., in 2010, who diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Bipolar Disorder |
| Axis IV: | Primary Social |
| Axis V: | 50 |

(Tr. 591).

When Plaintiff filed her SSI application on May 3, 2011, she reported she was taking Seroquel and Xanax. (Tr. 222).  In her Disability Report- Adult- dated May 17, 2011, she reported she was taking Abilify, Celexa, Seroquel, and Xanax. (Tr. 230).  On October 12, 2011, non-examining consultant, Christal Janssen, Ph.D., completed a Mental RFC Assessment1, wherein Dr. Janssen found Plaintiff appeared able to perform simple/repetitive work with incidental interpersonal contact and direct/concrete supervision. "Unskilled." (Tr. 621).  Dr. Janssen also completed a Psychiatric Review Technique Report on July 20, 2011, and found Plaintiff had a mild degree of limitation in activities of daily living, a moderate degree of limitation in maintaining social functioning and in maintaining concentration, persistence, or pace, and had no episodes of decompensation, each of extended duration. (Tr. 633).

On January 29, 2012,  Plaintiff presented to Northwest Medical Center in Springdale for evaluation secondary to stress and depression as well as complaints of suicidal gesture.

5

(Tr. 706). Plaintiff reported that she had been off of her Seroquel since May of 2011 as well as the Trazodone and Abilify. (Tr. 706). It was noted that Plaintiff was smoking one pack of cigarettes per day at that time, and that her last drug usage was approximately two days previously, with marijuana and methamphetamine. (Tr. 707). At that time, her gait and station were reported as normal, and the stability, strength and tone in the bilateral upper extremities and lower extremities were reported as normal. (Tr. 707). Plaintiff was assessed with suicidal gesture, depression, polysubstance abuse, hypertension, diabetes mellitus, type 2, noncompliant, and acute migraine. (Tr. 708). While Plaintiff was in the hospital, on January 30, 2012, Dr. Rachel Fiori evaluated Plaintiff, and was informed that Plaintiff had been trying to get into Ozark Guidance, that they were "too busy" and "not able to do anything" and that without her medications, her mood had been "really shitty." (Tr.712). Plaintiff's drug screen was positive for amphetamines, methamphetamine, and THC. (Tr. 713). Plaintiff was then diagnosed as follows:

| | |
|---|---|
| Axis I: | Mood disorder, nos |
| | Methamphetamine abuse |
| | Marijuana abuse |
| Axis II: | Borderline personality traits |
| Axis III: | Diabetes, hypertension, headaches |
| Axis IV: | Primary support, financial, and access to care |
| Axis V: | GAF – 45 |

(Tr. 714). Thereafter, on February 14, 2012, Plaintiff presented herself to UAMS Family Medical Center, denying suicidal ideation, but was mildly depressed and increasingly anxious. (Tr. 716). At that time, it was reported that Plaintiff was smoking 1 and ½ packs of cigarettes per day. (Tr.716). She was reported as stable, and was to follow up at Ozark Guidance for evaluation and management for her psychiatric indications. (Tr. 717). On April

12, 2012, non-examining consultant, Jon Etienne Mourot, Ph.D., affirmed the July 20, 2011 rating given by Dr. Janssen. (Tr. 870).

On October 30, 2012, Plaintiff presented to Northwest Medical Center, requesting medication for her acute anxiety. (Tr. 937). She reported that she had been out of "psych" medications for three months, and denied suicidal ideations. (Tr.942). On that same date, Plaintiff was seen by Lisa Kessler, LCSW, of Ozark Guidance, and Plaintiff reported that she last took medications in July. (Tr. 979). Plaintiff indicated that she self-medicated with marijuana, which helped with her anxiety, two to three times weekly. (Tr. 979). Ms. Kessler diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | PTSD – chronic |
| | Mood Disorder, Unspecified Episodic |
| Axis II: | Diagnoses deferred |
| | R/O Borderline Personality Disorder |
| Axis III: | OMC – other medical condition |
| | Back pain |
| Axis IV: | problems with primary support |
| Axis V: | GAF – 41 |

(Tr. 984). Retha Gregory, LPC, of Ozark Guidance, saw Plaintiff on December 3, 2012, and gave the same diagnosis. (Tr. 974). On December 28, 2012, Dr. William Meaney, of Ozark Guidance, saw Plaintiff and noted that Plaintiff had been told she must be borderline and that she must be bipolar. However, Dr. Meaney reported that a "mixture of dysthymia and PTSD is closer to the actual dynamics." (Tr. 1008). His diagnosis was as follows:

| | |
|---|---|
| Axis I: | Posttraumatic Stress Disorder |
| | Mood Disorder, Unspecified Episodic |
| Axis II: | Diagnosis deferred |
| Axis III: | OMC – Other Medical Condition |
| | Back pain |
| Axis IV: | Problems with primary support |
| Axis V: | GAF – 41 |

(Tr. 1009). On January 24, 2013, Dr. Barry Cole, of Ozark Guidance, diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | PTSD – chronic |
| | Dysthymic Disorder – with atypical features |
| Axis II: | Diagnosis deferred |
| Axis III: | OMC and diabetes |
| Axis IV: | problems with primary support |
| Axis V: | GAF – 41 |

(Tr. 1011).

### B. Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 18). The ALJ discussed Plaintiff's daily activities, noting that she was independent with self-care, cooked meals and shopped for the household, and performed regular household cleaning and chores. (Tr. 15). He also noted that Plaintiff was rearing two

children, read and studied religion, followed written instructions okay, and was able to shop once a month for goods and supplies. (Tr. 15).  The ALJ also discussed the fact that when Plaintiff was compliant and current with her medications, she functioned adequately and within reasonable vocational expectations. (Tr. 17).  The ALJ observed that in spite of her anxious and sometimes depressed mood, Plaintiff was consistently found to be alert and cooperative with logical thoughts, an intact memory, appropriate judgment and insight, and free of hallucinations and or delusions. (Tr. 18).  The ALJ mentioned the fact that Plaintiff had not particularly adhered to medical advice and directives from her physician, which he found served to undermine her credibility as it related to her allegations and said intensity and persistence of her reported symptoms. (Tr. 18).  For example, against her physicians' urgings, Plaintiff continued to smoke cigarettes,[1] eat fatty foods, forego exercise, and drank up to 32 ounces of regular soft drinks per day. (Tr. 18).  The ALJ also noted the fact that Plaintiff also indicated that she was trying to assist with the care of her father, who is in failing health. (Tr. 18).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### C.  RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);

---

[1] Plaintiff's smoking habit discredits her disability allegations. See Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997)

Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'"  Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

Plaintiff argues that the ALJ failed to reference or acknowledge Plaintiff's consistently low GAF scores, and that considering the low GAF scores, her reported mental limitations and restrictions, as well as her testimony and that of the VE, the ALJ's decision is not based upon substantial evidence.

The Court first notes that the Eighth Circuit has held that GAF scores are "not essential to the accuracy of an RFC determination, only that it may be of considerable help in formulating RFC."  Earnheart v. Astrue, 484 F. Appx. 73, 75 (8th Cir. 2012); King v. Colvin, No. C13-3039-LTS, 2014 WL 1344194, at *11 (N.D.Iowa, Apr. 4, 2014).  In addition, in Jones v. Astrue, 619 F.3d 963, 973-974 (8th Cir. 2010), the Eighth Circuit referenced a 6th Circuit opinion, DeBoard v. Comm'r of Soc.Sec., 211 Fed. Appx. 411, 415 (6th Cir. 2006)(unpublished), in support of its position, when it stated that "an ALJ may afford greater

10

weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones, 619 F.3d at 974.

It is clear that the ALJ considered the GAF scores, as is evidenced by the following dialogue that took place at the hearing:

> ALJ:  Throughout the record, there's an awful lot of reporting of GAF scores of anywhere between 40 and 50.  And even though the more recent GAF scores were even lower than it had been, hardly anywhere is a clinic reporting of anything other than, as I read it, the clinician reporting that in spite of the underlying disorder that with medication and with adaptation to life that she is functionally okay and that she appears okay.  What I would like in addition to testimony is for you, as we go through the record today, if there's anything that you spot in the way of actual clinical reportings of signs and symptoms and the way a person appears and instances of things that happened and that sort of thing that would support that kind of a result on a GAF score other than just simply diagnosis of posttraumatic disorder and dysthymic disorder.  I point it out, in other words, I'm a little low just based on my experience and the way these files are, I'm a little hesitant just simply to say that diagnosis is all that's required in order to find a GAF score, regardless of what the diagnosis is, whether it's physical, mental or whatever, --
>
> …
>
> ATTY:  And I understand what you're saying, Judge, and I'll do my best. The only thing I will tell you is that the GAF score that the Ozark Guidance Center has assigned, if you look at it, the thing that gives it credibility is that Ms. Duncan has seen several different psychologists or psychiatrists and they have all, after evaluating her and giving her similar diagnoses, have all given her GAF scores below 50. Dr. Brad Bigelow, back in '06, was at 45. You know, the OGC records, which are more recent obviously, are even lower than that. …

(Tr. 47-49).  Clearly, the ALJ considered the GAF scores, but gave greater weight to the medical evidence and testimony.

With respect to Plaintiff's other alleged physical impairments, there are countless records indicating Plaintiff was not compliant with treatment recommendations, such as

11

obtaining an ultrasound for her gallbladder issues (Tr. 763, 767, 778);  failing to quit smoking (Tr. 734, 746, 967); failing to follow up with the Lawton Community Health Clinic (Tr. 760, 775); and failing to take medicine for her diabetes and high blood pressure (Tr. 721, 724).  Plaintiff also testified at the hearing that between 2009 and 2011, she was tolerating her medication with no side effects, and was "doing good on my medications."  (Tr. 60-61).

The Court recognizes that in some of the records, Plaintiff indicated that she was unable to obtain treatment because she could not afford it.  However, Plaintiff was able to afford to smoke from 1 to 1 ½ packs of cigarettes per day, which indicates that she apparently chose to spend her money on cigarettes rather than treatment.  (Tr. 16).  In addition, although Plaintiff indicated in one of her function reports that all she did all day was lie on the couch, there is other evidence indicating otherwise, as noted by the ALJ and discussed above.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### D.  Hypothetical Question to VE:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. <u>Goff v. Barnhart</u>, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing such jobs as hand packager – medium work; hand packager; advertising material distributor;

machine packaging, and janitorial work – all light work.  <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 17th day of August, 2015.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE